Fuchsberg, J.
(dissenting). As I read it, CPLR 308 (subd 4)’s use of diverse terms to specify the locations at which the two steps of "nailing” and "mailing” must take place renders the statute ambiguous. Therefore, until such time as the Legislature sees fit to revamp its confusing verbiage, I believe we should wield our well-recognized prerogative of construing procedural statutes so as not to foreshorten the legitimate claims and expectations of litigants (see CPLR 104; McKinney’s Cons Laws of NY, Book 1, Statutes, § 325). The present case, in which there is a common view of the essential facts, is illustrative.
In this action for wrongful death of the surviving plaintiff’s husband and for serious personal injuries to herself, the majority accepts Special Term’s finding that the "due diligence” which is the prerequisite to resort to substitute service under CPLR 308 (subd 4) was fulfilled. And, I agree with the majority that the claimed estoppel on which, in part, Special Term relied in reaching its decision is not at the heart of the problem in this case. Nor is it disputed that plaintiff, complying with CPLR 308 (subd 4), mailed the summons to the defendant at the last address at which she had reason to believe the defendant resided, i.e., in terms of the statutory language, "at his last known residence”. Consequently, in the end, the issue is simply whether plaintiff also met the remaining requirement, i.e., "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode * * * of the person to be served”, when she did so at the same address rather than at the one to which it later turned out defendant, unbeknownst to the plaintiff and without leaving a postal forwarding address, had moved his actual residence.*
I am of the opinion that the service satisfied the legislative mandate. This conclusion flows from the ensuing rationale. *243 Start by adopting as apropos Professor David Siegel’s comment that "the precise meaning of the phrases used [in the statute] has yet to be discerned” (Siegel, New York Practice, § 72, p 78). Note then that, consistently with this observation, commentators have cautiously found it safest to describe it largely in haec verbae (McLaughlin, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C308:2, C308:4, pp 207-208; Siegel, New York Practice, §§ 72, 74, pp 77-78, 80; 1 Weinstein-Korn-Miller, NY Civ Prac, pars 308.13a, 308.14). Add to this the fact that, as the majority recognizes, CPLR 308 in its present form was intended to lessen the difficulty in obtaining jurisdiction over hard-to-find defendants, in response to which some frustrated process servers had developed an unfortunate and scandalous penchant for "sewer service”; indeed, procedural scholars, who, in contrast with the sparseness of their commentary on the statutory language itself, speak freely of its purpose, emphasize that its latest amendment, enacted in 1971, proceeded on the theory that a less demanding statute, by simplifying the path to substituted service, would destroy the incentive for such slipshod or unlawful conduct (New York State Judicial Conference Report to the 1970 Legislature in Relation to the CPLR 32-37; Weinstein-Korn-Miller, op cit., par 308.13; Siegel, op cit, § 71, p 76).
In this light, it seems to me that the appearance of any internal inconsistency that may be created by the imprecise phraseology of CPLR 308 (subd 4), absent legislative correction, should be resolved by reading its various references to the place where a prospective defendant lives — "dwelling place”, "usual place of abode”, "last known residence” — as though they were essentially synonymous (see CPLR 104). In handling the seeming redundancies, we would be merely viewing the work of the legislative draftsmen as of a part with the drafting of legal documents in which a series of words of varying shades of meaning are commonly utilized to make certain that an intended single meaning is included.
Moreover, I suggest that, consistent with the expressed intent of the legislation’s sponsors to liberalize substituted service procedure, the word "actual” should be taken as intended to qualify only a single alternative — "place of business”, rather than all the phrases which follow it. This would accord with accepted principles for statutory interpretation (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 254).
Those who sponsored this legislative reform could hardly *244 have had in mind that a plaintiff would do his "mailing” to a place where he had reason to believe a defendant no longer lived, especially when in fact a more current location had become known to him. Pragmatically, then, "the last known” residence to which "mailing” is to be directed must be taken to be no different than the defendant’s "place of usual abode” or "dwelling place” at which the statute variably tells us the "nailing” to the door is to take place. After all, the "mailing” and "nailing”, both ways of bringing home the fact of commencement of suit, are most effectively directed to the place where a defendant is most likely to receive the first and see the second.
I would, therefore, reinstate the order denying defendant’s motion to dismiss the complaint for lack of personal jurisdiction.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Meyer concur with Judge Gabrielli; Judge Fuchsberg dissents and votes to reverse in a separate opinion.
Order affirmed.

 The defendant and his parents had resided together at this address. However, after his departure from the household, the name on the door, as seen by the process server and as confirmed by a neighbor who subsequently testified to that effect, did not reflect this change. As it happens, when the summons mailed to that address arrived for the defendant, it was taken in hand by the father, who, though not on speaking terms with his son, had it delivered to him.